Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CAPARRA CENTER ASSOCIATES, LLC<br><br>Apelante<br><br>v.<br><br>BERTHA NEUMANN DE ZAYAS Y OTROS<br><br>Apelados | KLAN202400168 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Sobre:<br>Cobro de Dinero e Incumplimiento de Contrato<br><br>Caso Núm.:<br>BY2021CV03175 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Rivera Marchand y el Juez Salgado Schwarz

Domínguez Irizarry, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de mayo de 2024.

La parte apelante, Caparra Center Associates, LLC, comparece ante nos para que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Bayamón, el 18 de diciembre de 2023, notificada el 21 de diciembre de 2023. Mediante la misma, el foro *a quo* declaró *No Ha Lugar* una *Moción de Sentencia Sumaria* promovida por la parte apelante, y, en consecuencia, desestimó una demanda sobre cobro de dinero e incumplimiento de contrato incoada en contra de los aquí apelados, el señor Luis M. Fernández Massó, su señora esposa, Bertha Neumann de Zayas y la Sociedad Legal de Gananciales por ambos compuesta.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I**

El 11 de agosto de 2021, la parte apelante presentó la demanda de epígrafe. En esencia, alegó que, el 3 de agosto de 1994, suscribió un contrato de arrendamiento con la entidad Beauty Secrets, Inc., ello por conducto de su Presidente, el apelado

Número Identificador

SEN2024 _____

Fernández Massó. Según sostuvo, en virtud del referido vínculo, Beauty Secrets, Inc., arrendó un local comercial sito en el centro comercial San Patricio Plaza, a cambio del pago de un canon de arrendamiento mensual de $4,690.00 por los primeros cinco (5) años del acuerdo y de $5,863.00 por el término restante. El contrato de arrendamiento en disputa tenía una vigencia de diez (10) años, a vencer el 30 de junio de 2005.

En su demanda, la parte apelante indicó que los aquí apelados expresamente se constituyeron en garantizadores personales del contrato de arrendamiento en disputa. Sobre dicho particular, sostuvo que, a tenor con ello, estos se comprometieron a, entre otras obligaciones, garantizar el pago oportuno de todas las prestaciones económicas pactadas en el contrato de arrendamiento, así como de toda obligación contraída entre los contratantes principales. Al proseguir en sus alegaciones, la apelante expresó que, el 11 de julio de 2005, las partes suscribieron una primera enmienda al contrato de referencia, consistente en un cambio en el nombre de la entidad arrendataria, a los fines de comparecer en la obligación como Beauty Factory I, Inc. Añadió que, posteriormente, el 31 de agosto de 2015, convinieron una nueva enmienda en virtud de la cual extendieron la vigencia del contrato de arrendamiento en controversia, a los efectos de que venciera el 30 de junio de 2018. Al respecto, la parte apelante afirmó que los términos y condiciones pactados en el contrato original quedaron inalterados, incluyendo la garantía personal suscrita por los aquí apelados.

La parte apelante expuso que Beauty Factory I, Inc. incumplió con sus obligaciones como arrendataria, adeudándole una suma total de $92,259.30 por concepto de cánones de arrendamiento vencidos. De este modo, y tras aducir que sus gestiones extrajudiciales de cobro fueron infructuosas, solicitó al Tribunal de Primera Instancia que ordenara a los apelados, como garantizadores

solidarios de la deuda en disputa, a satisfacer la misma. La entidad apelante acompañó su demanda con, entre otros documentos, copia de los contratos en disputa, copia del contrato de garantía suscrito por los apelados, así como con copia de la enmienda contractual antes aludida.

El 24 de abril de 2022, los apelados presentaron su *Contestación a Demanda.* En esencia, plantearon que, contrario a lo aducido por la entidad apelante, si bien se constituyeron como garantizadores personales del contrato original, ello nunca ocurrió respecto al segundo contrato suscrito entre las partes. Al abundar, indicaron que en el año 2015, los contratantes suscribieron una nueva obligación distinta a la que asumieron en el año 1994, por lo que, al nunca suscribir una nueva garantía personal sobre el cumplimiento de la última obligación entre las partes, la obligación subsidiaria que asumieron se extinguió. Al amparo de ello, los apelados se reafirmaron en que ningún deber de cobro ostentaban frente a la parte apelante, toda vez que, para el periodo en el que se acumuló la deuda reclamada, no eran arrendatarios del lugar ni deudores en forma alguna. A su vez, adujeron que la parte apelante carecía de legitimación activa para reclamar el pago de los cánones adeudados entre septiembre de 2013 y agosto de 2014, toda vez que, para dichas fechas, esta no existía como persona jurídica. De este modo, a tenor con sus defensas, los apelantes afirmaron que la entidad compareciente carecía de causa de acción en su contra, por lo que solicitaron la desestimación de la demanda de epígrafe.

Así las cosas, el 12 de septiembre de 2023, la parte apelante presentó una *Moción de Sentencia Sumaria.* En esta, ocasión, reprodujo sus previos argumentos, ello al sostener que no existía controversia de hechos respecto a la efectiva existencia de una garantía personal suscrita por los apelados en cuanto al cumplimiento del contrato de arrendamiento en disputa, así como,

tampoco, en cuanto a su capacidad legal para promover la reclamación de epígrafe. Específicamente, hizo alusión a lo pactado en la Sección 22.9 del contrato de arrendamiento suscrito en el año 1994, todo con relación a su efecto vinculante respecto a los sucesores de los contratantes, y sostuvo que, al sustituir, como arrendadora, a su predecesora Caparra Center Associates, S.E., los apelantes estaban impedidos de impugnar su legitimación activa. En cuanto a la garantía personal de la obligación en litigio, indicó que, en su deposición, el apelado Fernández Massó hizo una admisión a tal fin. Igualmente, añadió que la enmienda efectuada al contrato original nunca alteró los términos de las obligaciones contraídas por los apelantes, por lo que estos, como garantizadores personales solidarios del arrendamiento en disputa, no podían soslayar su responsabilidad. A los fines de apoyar su argumento, la parte apelante indicó que la expiración de la vigencia del contrato suscrito en el año 1994, no liberó a la arrendataria, por lo que, existiendo una obligación de pago principal, las garantías suscritas a favor del cumplimiento de la misma, en estricto derecho, subsistían. De esta forma, la entidad apelante afirmó que, habiendo sido incumplido el deber de pago pactado, los apelados quedaban sujetos a la ejecución de la garantía personal que suscribieron. Así, solicitó al Tribunal de Primera Instancia que declarara con lugar *Moción de Sentencia Sumaria* y proveyera de conformidad con su súplica.[1]

---

[1] La parte apelante acompañó su solicitud de sentencia sumaria con la siguiente prueba documental: 1) documentos acreditativos de su incorporación según expedidos por el Departamento de Estado; 2) copia de la primera página del contrato de arrendamiento suscrito en el 1994 con Beauty Secrets, Inc.; 3) copia de la toma de deposición del apelado Fernández Massó, con fecha del 23 de mayo de 2023; 4)copia de la enmienda efectuada al contrato de arrendamiento con fecha del 11 de julio de 2015, intitulada *Amendment to Lease Agreement*; 5) copia de carta suscrita en el año 2015 por la parte apelante, dirigida al apelado Fernández Massó y a Beauty Secrets. Inc., notificando un acuerdo contractual sobre ajuste de renta básica; 6) copia de documentos relacionados a una demanda federal incoada por la parte apelante en contra de Beauty Factory I, Inc. (*Proof of Claim*).

Por su parte, el 2 de octubre de 2023, los apelados comparecieron mediante *Solicitud de Sentencia Sumaria de la Parte Demanda.* En la misma, reiteraron su postura en cuanto a que nunca se obligaron a garantizar los nuevos términos del contrato de arrendamiento ni sus modificaciones. En específico, destacaron que, del propio contrato de garantía surgía que la misma no podía ser modificada verbalmente, por lo que, en ausencia de documento que acreditara que, efectivamente, convinieron garantizar el cumplimiento de la obligación principal suscrita en el año 2015, ninguna reclamación de pago podía interponerse en su contra. Así, y sosteniendo que no existía controversia de hechos respecto a lo antes expuesto, solicitaron al tribunal primario que acogiera su petitorio y desestimara la causa de acción de epígrafe.[2]

Ahora bien, en igual fecha, los apelados presentaron su escrito en *Oposición a Solicitud de Sentencia Sumaria de la Parte Demandante.* En esta ocasión, y atinente a la controversia de autos, se reafirmaron en que solo garantizaron la obligación de arrendamiento comercial asumida en el año 1994, sin que ratificaran dicha obligación en las enmiendas posteriores al contrato. Destacaron que nunca consintieron modificación alguna a los términos bajo los cuales se obligaron, limitándose, estos, a responder por algún incumplimiento, exclusivamente, de lo originalmente pactado. Añadieron, que, a tenor con la norma aplicable, las obligaciones de fianza no se presumen, por lo que en

---

[2] Los apelados acompañaron su moción de sentencia sumaria con la siguiente prueba documental: 1) copia de la toma de deposición del apelado Fernández Massó, con fecha del 23 de mayo de 2023; 2) copia del contrato de arrendamiento suscrito en el año 1994; 3) copia del contrato de garantía, intitulado *Personal Guaranty,* suscrito el 3 de agosto de 1994; 4) copia de una enmienda al contrato de arrendamiento suscrita el 11 de julio de 2005; 5) copia de carta suscrita en el año 2015 por la parte apelante, dirigida al apelado Fernández Massó y a Beauty Secrets, Inc., notificando un acuerdo contractual sobre ajuste de renta básica; 6) copia de documentos relacionados a una demanda federal incoada por la parte apelante en contra de Beauty Factory I, Inc. ( *Proof of Claim)* ; 7) copia de la toma de deposición del señor Luis R. González Rosa, representante de la parte apelante, con fecha del 14 de junio de 2023; 8) copia del *Amendment to Lease Agreement* con fecha del 11 de julio de 2005.

ausencia de una expresa determinación a los fines de garantizar el arrendamiento comercial convenido en el año 2015, no tenían que responder por el cumplimiento del mismo. En el pliego, los apelados también expusieron que de los documentos con los cuales la parte apelante acompañó su solicitud de sentencia sumaria, acreditaban que la deuda reclamada fue asumida por una entidad que se creó con posterioridad a la vigencia de su garantía y distinta a aquella cuyas obligaciones aseguró, a saber, Beauty Factory I. Inc. A ello añadió que, contra esta entidad, la parte apelante reclamó en la corte de quiebras una acreencia por $77,621.65, por concepto de cánones de arrendamiento al descubierto, deuda que expresamente reputó como no garantizada. Así, se reiteraron en que la parte carecía de remedio alguno bajo las alegaciones de cobro de garantía que promovió.

Por su parte, el 27 de octubre de 2023, la parte apelante presentó su *Oposición a Solicitud de Sentencia Sumaria de la Parte Demandada.* En esencia, planteó que los apelados incumplieron con los criterios procesales establecidos para oponerse a una solicitud de sentencia sumaria y, a su vez, se reiteró en las alegaciones de su demanda.

Finalmente, y luego de acontecidas varias incidencias, el 21 de diciembre de 2023, el Tribunal de Primera Instancia notificó la *Sentencia* que nos ocupa. Mediante la misma, acogió los argumentos propuestos por los apelados y concluyó que la parte apelante no podía oponer en su contra derecho de garantía alguno sobre el cumplimiento de la obligación de arrendamiento en controversia. Específicamente, dispuso que la prueba estableció que, como parte de los acuerdos vinculados al contrato de arrendamiento suscrito el 3 de agosto de 1994, los aquí apelados se obligaron al suscribir una garantía personal sujeta a la vigencia del convenio. Añadió que, según la evidencia, en el año 2005 dicho

contrato venció, suscribiéndose un segundo acuerdo relativo a los términos del arrendamiento entre las partes contratantes. Al respecto, el foro *a quo* afirmó que este segundo contrato fue suscrito por Beauty Factory I, Inc., entidad con personalidad jurídica propia y separada a la del apelado Fernández Massó y distinta a aquella que se obligó en el primer vínculo y por la cual los apelantes ofrecieron la garantía en disputa. Al proseguir, expresó que el primer contrato de arrendamiento era claro al imponer un término improrrogable de vencimiento, por lo que, llegado el año 2005, el mismo tenía que negociarse nuevamente y, junto con él, las garantías previstas para su cumplimiento. A tenor con ello, el tribunal sentenciador dispuso que el hecho de que, el contrato suscrito en el año 2015 entre la parte apelante y Beauty Factory I, Inc. se extendieran cláusulas del contrato del año 1994 y de la enmienda al mismo en el año 2005, no implicaba una extensión automática de la obligación de arrendamiento comercial original. Así, dispuso que no existía duda alguna que el contrato suscrito el año 2015 era uno nuevo e independiente, que nunca fue garantizado por los apelados. De este modo, determinó que la parte apelante carecía de causa de acción alguna en contra de estos, por lo que denegó su solicitud de sentencia sumaria y proveyó para la desestimación del pleito de epígrafe.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 23 de febrero de 2024, la parte apelante compareció ante nos mediante el presente recurso de apelación. En el mismo, expone los siguientes planteamientos:

> Erró el TPI al no reconsiderar la Sentencia en la cual desestimó sumariamente la demanda, basado en una relación de hechos incompleta, una apreciación de la prueba equivocada e insostenible y abuso de su discreción al alcanzar conclusiones contrarias a la prueba e irrazonables.

Erró el TPI al desestimar sumariamente la demanda, abusando de su discreción e incurriendo error manifiesto y de derecho.

Erró el TPI en la apreciación de la prueba, de su discreción e incurriendo en error manifiesto y de derecho en la interpretación de las disposiciones del contrato de arrendamiento de 3 de agosto de 1994, según enmendada, al omitir hechos esenciales y alcanzar conclusiones sin fundamento fáctico y legal alguno y en clara contraposición con las disposiciones contractuales aplicables.

Erró el TPI en la aplicación errónea del derecho en la Sentencia y sustituir la voluntad expresa de las partes dimanantes de disposiciones contractuales validas y legales y sustituirla por su criterio y/o una posición que no se sostiene en la prueba.

Erró el TPI al no tomar en consideración los términos y condiciones del exhibit e, "*Personal Guaranty*" del contrato de arrendamiento, de 1994 y las del "*Amendment to Lease Agreement*" de 2005, al concluir que la garantía personal venció el 30 de junio de 2005 y liberar de responsabilidad a los apelados.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

**II**

**A**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR

664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *Universal Ins. y otro v. ELA y Otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 979-980*; Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág.

333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.*, supra pág. 677*; SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432-433 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.*, supra, pág. 678*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, pág. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000)*.* Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de

hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

**Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

**Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**B**

Por su parte, el Artículo 1206 del Código Civil de Puerto Rico[3], 31 LPRA sec. 3371, dispone que existe un contrato desde que dos o más personas consienten a obligarse entre sí a dar alguna cosa o a prestar algún servicio. Lo anterior resulta del principio de la autonomía de la voluntad, cuya esencia radica en otorgar un amplio margen de libertad de acción a los particulares que desean obligarse, siempre que sus acuerdos sean cónsonos con la ley, la moral y el orden público. 31 LPRA sec. 3372. Las obligaciones derivadas de los contratos tienen fuerza de ley entre las partes y deben cumplirse a tenor con lo acordado. 31 LPRA sec. 2994. La existencia de un contrato está sujeta a la necesaria concurrencia de los requisitos de consentimiento, objeto cierto y causa de la obligación que se establezca. 31 LPRA sec. 3391. Así, una vez perfeccionado, el mismo no sólo obliga a lo expresamente pactado, sino también a

---

[3] Dado a que los hechos de la presente causa acontecieron previo a la aprobación del Código Civil de 2020, dispondremos de la misma al amparo de lo estatuido en el Código Civil de 1930, cuerpo legal vigente al momento de los hechos en controversia.

todas sus consecuencias de acuerdo a la buena fe, al uso y a la ley. 31 LPRA sec. 3375. Acreditadas dichas condiciones, los contratos rigen la conducta de todos los involucrados, no importa la forma en que los mismos se hayan celebrado. 31 LPRA sec. 3451. De este modo, cuando un contrato es perfectamente legal, los tribunales de justicia están impedidos de relevar a una parte de acogerse a sus términos. *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

En el contexto de la interpretación contractual, sabido es que cuando los términos y condiciones de determinado acuerdo son claros y no dan paso a duda alguna, se entenderá al sentido literal de su letra. 31 LPRA sec. 3471. Sin embargo, en ocasión a que medien disposiciones ambiguas en el cuerpo de determinado vínculo contractual, que resulten en la imposibilidad de descifrar la verdadera intención de los contratantes, la norma de hermenéutica aplicable permite la intervención del foro judicial a los efectos hacer prevalecer la voluntad contractual sobre toda duda. Una cláusula es ambigua cuando su lenguaje, aun siendo, en apariencia, preciso, admite interpretaciones conflictivas. En tales casos, ello no deberá favorecer a quien haya ocasionado la oscuridad de los términos. 31 LPRA sec. 3478.

De otro lado, y en lo aquí atinente, nuestro estado de derecho reconoce que, por su naturaleza, un contrato de garantía personal típicamente se considera como uno de *fianza. San José Realty, S.E. v. El Fénix de P.R.,* 157 DPR 427, 495 (2002). En el contrato de *fianza* una parte se obliga a pagar o a cumplir por un tercero, en caso de este no hacerlo. 31 LPRA sec. 4871. De este modo, el fiador "respalda la obligación que el deudor tiene con su acreedor, de suerte que, si aquel falla en cumplir con este, entonces, el fiador aviene responsable del cumplimiento". J.R. Vélez Torres, *Curso de Derecho Civil; Derecho de Contratos,* San Juan, Universidad Interamericana de Puerto Rico, T.IV, Vol. II, pág. 528. Así, se

"proporciona al acreedor mayor probabilidad de ver satisfecho su interés, ya que se amplía su poder de agresión a un patrimonio distinto del origina[lmente] responsable". *Universal Ins. v. Popular Auto,* 207 DPR 228, 239 (2021).  Este tipo de vínculo nace al amparo de una obligación preexistente válida, a la cual su vida jurídica está necesariamente supeditada.  31 LPRA sec. 4873.  De ahí que se le considera como una obligación de carácter accesorio. *Ortiz Rolón v. Armando Soler Auto Sales et al.,* 202 DPR 689, 698 (2019). Igualmente, el estado de derecho reconoce que el contrato de fianza es una garantía personal, en virtud de la cual el fiador puede obligarse a menos, pero no a más de lo asumido por el deudor principal, ya sea en la cantidad o en lo oneroso de la obligación.  31 LPRA sec. 4875; *Universal Ins. v. Popular Auto,* supra, pág. 239; *Ortiz Rolón v. Armando Soler Auto Sales et al.,* supra, pág. 698.

La norma vigente es enfática al disponer que la fianza no se presume, debe constar en forma expresa y no puede extenderse a más de su contenido.  31 LPRA sec. 4876; *Universal Ins. v. Popular Auto,* supra, pág. 239; *Ortiz Rolón v. Armando Soler Auto Sales et al.,* pág. 698.  Del mismo modo, como norma general, se cataloga como una obligación de naturaleza subsidiara, puesto que el fiador se obliga a responder solo en caso de que el deudor principal incumpla, luego de que su acreedor se haya valido de todos los medios pertinentes para ejecutar su acreencia.  31 LPRA sec. 4891.

### III

En la presente causa, la parte apelante en esencia plantea que erró el Tribunal de Primera Instancia al desestimar sumariamente la demanda de epígrafe, ello al sostener que los apelados tenían una obligación contractual válida y vigente de garantía sobre la deuda reclamada. Al respecto, aduce que de la interpretación de los contratos de arrendamiento que vincularon a las partes desde el año 1994, surgía la voluntad de los apelados de constituirse en

garantizadores de la obligación principal de arrendamiento pactada, por lo que se debió haber provisto para que estos satisficieran el monto adeudado por dicho concepto. Habiendo examinado los señalamientos propuestos a la luz de los hechos establecidos y el derecho aplicable, confirmamos la *Sentencia* apelada.

Un examen del expediente de autos nos permite concluir que la determinación aquí impugnada obedece a la más correcta aplicación de las normas procesales y sustantivas que regulan la materia que nos ocupa, así como de aquellas atinentes al mecanismo adjudicativo empleado para finiquitar la disputa de epígrafe. Tal cual se resolvió, nada en los documentos de autos acredita que la parte apelante tenga a su favor una garantía de pago, ello respecto a la acreencia cuyo saldo reclama. La prueba documental que ante nos obra no sostiene la afirmación de la entidad compareciente en cuanto a que los apelados garantizaron el cumplimiento de la obligación principal de arrendamiento comercial suscrita en el año 2015 con la compañía Beauty Factory I, Inc., por lo que ninguna obligación al respecto puede imputársele.

En principio, si bien, en el año 1994, los apelados expresamente se constituyeron como garantizadores personales y solidarios de una obligación de pago a favor de la parte apelante, el contrato principal cuyo cumplimiento aseguraron perdió su vigencia en el año 2005. Nada en los documentos permite entrever que, como parte de los acuerdos sobre el arrendamiento del local comercial en litigio suscrito en el año 2015, los apelados nuevamente sometieran su voluntad a un contrato de garantía para responder por el cumplimiento pactado. Es por ello que coincidimos con el Tribunal de Primera Instancia en su apreciación en cuanto a que la parte apelante incide al sostener que el contrato perfeccionado en el año 2015, dejó inalteradas las garantías suscritas en aquel que se celebró en el 1994. Tal cual esbozáramos, los contratos de garantía

personal, por su carácter accesorio, no se presumen y están sujetos a la vida jurídica de la obligación principal. Siendo así, toda vez extinto el contrato de arrendamiento suscrito en el año 1994, y en ausencia de un contrato expreso en virtud del cual los apelados renovaran la garantía personal que en ese entonces otorgaron, ello para responder por la obligación contraída en el año 2015, nada puede reclamarse en su contra.

Ahora bien, tal conclusión también se sustenta con el hecho de que la prueba estableció que, el contrato de arrendamiento suscrito en el año 2015, respecto al cual la parte apelante solicita el cumplimiento de lo debido, se formalizó con una persona jurídica distinta a aquella que contrató con la entidad en el año 1994. La reclamación de autos se fundamenta en una deuda contraída por Beauty Factory I, Inc. Esta entidad advino a la vida jurídica con posterioridad a que los apelados ofrecieran la garantía en controversia sobre la obligación suscrita por la extinta Beauty Secrets, Inc., y luego de que la misma perdiera vigencia. Por tanto, tratándose de contratantes distintos, estamos impedidos de, bajo las normas de interpretación contractual, imponer responsabilidad a una parte ajena al vínculo que se pretende ejecutar.

El expediente que nos ocupa nos ha permitido constatar que las determinaciones emitidas por el Tribunal de Primera Instancia encuentran apoyo legal y fáctico en los documentos presentados. El pronunciamiento apelado interpreta y aplica correctamente la norma vigente en nuestro estado de derecho, ello a la luz de una juiciosa y razonable apreciación de la prueba que ante el tribunal primario se presentó. De este modo, dado a que la parte apelante no estableció la existencia de un contrato de garantía suscrito a su favor por parte de los apelados, de modo que competiera imponerle a estos el deber de satisfacer la deuda reclamada, resolvemos que

no existe controversia de hechos alguna sobre la corrección de la desestimación resuelta.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones